

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1447-12

**JOE SHAWN HOLLANDER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### EASTLAND COUNTY

PRICE, J., delivered the opinion of the Court in which MEYERS, WOMACK, JOHNSON, COCHRAN, and ALCALA, JJ., joined. COCHRAN, J., filed a concurring opinion. KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.

### O P I N I O N

The Eleventh Court of Appeals held that the appellant did not suffer egregious harm when the trial court failed to instruct the jury that it must find certain predicate facts to be true to a level of confidence beyond a reasonable doubt before relying upon a statutory presumption to convict him.[1] We granted the appellant's petition for discretionary review

---

[1] *Hollander v. State*, 406 S.W.3d 567, 578 (Tex. App.—Eastland 2012).

in order to examine that holding. We will reverse.

## BACKGROUND

### The Statutory Presumption

A jury convicted the appellant of criminal mischief for tampering with a metering device in order to divert electricity, which he did not pay for, to the house in which he was residing.[2] A person commits the state-jail felony offense of criminal mischief by diverting a public service if, without the effective consent of the owner, he intentionally or knowingly diverts a public power supply and thereby causes pecuniary loss to the owner in an amount less than $20,000.[3] There is a statutory presumption that a person who receives the "economic benefit" of the service has engaged in the prohibited conduct.[4] If the State presents facts sufficient to give rise to this presumption, and the trial court finds that the evidence submitted at trial does not otherwise preclude a jury from believing the presumed fact beyond a reasonable doubt, then the matter must be submitted to the jury.[5] Upon consigning the issue to the jurors, the trial judge must charge them that they may use the presumption to find the defendant guilty only if the State proves the facts giving rise to the

---

[2] *See* TEX. PENAL CODE § 28.03(b)(4)(D). The house to which the services were allegedly diverted was located at 300 West 6th Street in Cisco, Texas, and the account for the electric utility was in the name of "John Coslett." We will hereinafter simply call it "the Cisco house."

[3] *Id.*; TEX. PENAL CODE § 28.03(a)(2).

[4] TEX. PENAL CODE § 28.03(c).

[5] TEX. PENAL CODE § 2.05(a)(1).

presumption *beyond a reasonable doubt.*[6]

## The Evidence at Trial

The indictment alleged that, "on or about April 26, 2010," the appellant tampered with an electric meter device, diverting power "by installation of two wires for such purpose." The jury charge tracked the indictment in this regard. An employee of the electric company testified that, sometime in late February 2010, he turned off the electricity to the Cisco house and sealed the meter box. On March 4, 2010, he noted that the seal had been broken and the power turned back on. This time, as the court of appeals describes it, "[h]e removed the meter, put a plastic cover over it, and closed the account."[7] On April 26, 2010, the same

---

[6] TEX. PENAL CODE § 2.05(a)(2). The proper charge to the jury should have included the following admonishments before the court entrusted the issue to the jury:

(2) If the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

[7] *Hollander*, 406 S.W.3d at 571.

employee was working next door to the Cisco house when he noticed that the seal had been broken again, and he observed wires "jumpering out to the meter box, turning the electricity on in the house." Again, he shut it off. There was no evidence to show when, between the dates of March 4th and April 26th, the "jumpering" wires were installed.

On April 25, 2010, the appellant received a citation for a minor offense unrelated to the tampering charge. The officer who issued the citation testified that the appellant listed the Cisco house as his residence. Moreover, the officer had seen the appellant going in and out of that house and believed it to be where the appellant resided. But he also testified on cross-examination, again as the court of appeals describes it, "that he could not state with certainty that he had seen the appellant at the address from the end of February to April 26, 2010; and that he had seen other people at the house during that time."[8] Defensive evidence showed that the house had belonged to the appellant's father, who was deceased, and that the electric company account was in the name of the appellant's stepbrother. The appellant's girlfriend testified that she had lived with the appellant at the Cisco house during parts of February and March (splitting time between the Cisco house and her own trailer house) and that the power was never turned on when they were staying there. Other defense witnesses established that, by the end of March, the appellant was no longer residing at the Cisco house. Meanwhile, as many as ten other people were essentially "squatting" there.

---

[8] *Id*. at 572.

The trial court did instruct the jury generally regarding the use of the presumption.[9] But the instruction failed to indicate, among other things, the level of confidence that the jury must achieve with respect to the facts giving rise to the presumption before it could rely on the presumption to convict. Specifically, it failed to inform the jury that it must find the predicate facts—here, that the appellant was "a person who is receiving the economic benefit of . . . public . . . power supply"—to have been established beyond a reasonable doubt before convicting the appellant based upon the presumption.

## On Direct Appeal

On appeal, the State conceded, and the court of appeals held, that the trial court erred by failing to charge the jury that the State had to prove the predicate facts beyond a reasonable doubt.[10] Because the appellant did not object to the trial court's oversight at trial, reversal is required only upon a showing that the appellant suffered egregious harm.[11] The

---

[9] That is to say, the jury was instructed specifically in the terms of Section 28.03(c) of the Penal Code. TEX. PENAL CODE § 28.03(c). Thus, the jury was told that

> [i]t is presumed that a person who is receiving the economic benefit of public communications, public water, gas, or power supply, has knowingly tampered with the tangible property of the owner if the communication or supply has been diverted from passing through a metering device, prevented from being correctly registered by a metering device, [or] activated by any device installed to obtain public communications, public water, gas, or power supply without a metering device.

However, none of the instructions mandated by Section 2.05(a)(2) of the Penal Code, which explains to jurors how to implement such a presumption, were given. *See* note 6, *ante*.

[10] *Hollander*, 406 S.W.3d at 577.

[11] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion on reh'g).

court of appeals concluded that the record in this case does not establish egregious harm because "the great weight of the evidence supports the facts giving rise to the presumption[.]"[12]   Presumably this reflects the belief that, had the jury been properly instructed, it surely would have found the predicate facts to be true beyond a reasonable doubt.  We granted discretionary review to evaluate this egregious-harm analysis.

## EGREGIOUS HARM UNDER *ALMANZA*

To determine whether the record establishes that the appellant suffered egregious harm, a reviewing court must consider 1) the complete jury charge, 2) the arguments of counsel, 3) the entirety of the evidence, including the contested issues and weight of the probative evidence, and 4) any other relevant factors revealed by the record as a whole.[13]  Neither party bears a burden of production or persuasion with respect to an *Almanza* harm analysis, the question being simply what the record demonstrates.[14]

### The Jury Charge Itself

Nowhere did the jury charge specifically inform the jurors of the degree of confidence to which they must be convinced of the facts underlying the presumption before they could return a guilty verdict.  The jury charge *did* instruct the jury appropriately with respect to the State's *general* burden to prove all of the constituent elements of the offense beyond a

[12]
*Hollander*, 406 S.W.3d at 578.

[13]
*Almanza*, 686 S.W.2d at 171.

[14]
*Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008).

reasonable doubt. But, as the court of appeals pointed out, this general instruction "[a]lone . . . did not remedy the error in the charge."[15] Such a general instruction fails to educate the jurors with respect to the level of confidence they must have in the verity of the predicate facts before they may rely on the presumption to convict.

### The Conduct of Counsel

Nothing that the parties said or did during the course of trial tended to remedy the deficiency. No mention was made of the burden of proof with respect to the presumption during voir dire; the prosecutor and defense counsel simply asserted that the State "must prove [the appellant's] guilt beyond a reasonable doubt." During opening statements, neither side mentioned anything about the level of confidence by which the jury must believe the predicate facts, only reminding the jury in a general way that the State carries the burden of proof. Finally, neither party's summation properly articulated the correct standard of proof with respect to the presumption.

It is true that during his final argument the prosecutor told the jury on several occasions that the State had to supply "corroborating" evidence to prove the presumption,[16]

---

[15] *Hollander*, 406 S.W.3d at 577 (citing *State v. Lewis*, 151 S.W.3d 213, 223 (Tex. App.—Tyler 2004)). *Cf. Francis v. Franklin*, 471 U.S. 307, 319-20 (1985) (general instructions with respect to the burden of proof and presumption of innocence "d[id] not dissipate the error in the challenged portion of the instructions" that shifted the burden of proof with respect to the element of intent in an unconstitutional manner).

[16] Throughout trial, the State characterized the evidence it proffered to supply predicate facts in support of the presumption as "corroborating" evidence. Strictly speaking, corroborating evidence is "evidence that differs from but strengthens or confirms what other evidence shows." BLACK'S

and he reminded the jury that the State had the overall burden of proof. But the prosecutor mentioned the general burden only to explain why the State would get to speak to the jury last during summation, not to educate the jurors as to the degree of confidence by which they must believe the predicate facts before utilizing the presumption to convict the appellant. The bare repetition of the prosecutor's assertion that the State carried the burden of proof—even with respect to the predicate facts supporting the presumption—did nothing to ameliorate the lack of an instruction regarding the specific level of *confidence* necessary for the jury to rely on those predicate facts before implementing the presumption. In fact, if anything, by repeatedly emphasizing the utility of the presumption without also suggesting to the jurors just how confident they must be with respect to the predicate facts supporting it, the prosecutor may well have managed only to encourage them to rely on the presumption under circumstances that are insupportable in the law. Defense counsel's final argument also mentioned the State's burden of proof only generally and, like the prosecutor's, failed to address what level of confidence in the predicate facts would justify the jury's application of the presumption.

### Contested Issues and Relative Weight of Probative Evidence

The court of appeals concluded that there was no egregious harm because it perceived

---

LAW DICTIONARY 636 (9th ed. 2009). Thus, evidence "corroborating" the presumption would best be understood to mean evidence of the appellant's guilt that is altogether *independent of* the presumption. In any event, even if the jury understood the prosecutor's references to "corroborating" evidence to mean the predicate facts in support of the presumption, use of the term certainly did nothing to remedy the deficiency of the court's charge insofar as it failed to inform the jury of the level of confidence in the predicate facts necessary to trigger its use of the presumption.

that "the great weight of the evidence supports the facts giving rise to the presumption."[17]

We take this to mean that the court of appeals believed that the jury likely would have found the predicate facts to be true to the requisite level of confidence, had they been instructed that they must in order to convict. The sum total of the court of appeals's analysis was as follows: "We have previously reviewed the evidence that supports the facts giving rise to the presumption: appellant was in control and management of the house as his residence and appellant benefitted from the tampered electric meter."[18] The previous review that the court of appeals alluded to occurred in the context of a claim that the evidence was legally insufficient to support the presumption.[19] While the earlier sufficiency analysis may help inform this third step in the *Almanza* analysis, relying on a holding that the evidence is legally sufficient is, by itself, inappropriate.[20] In an egregious-harm analysis, the question is not simply whether, when viewed in the light most favorable to the verdict, the jury *could* rationally have found predicate facts to a level of confidence beyond a reasonable doubt. Instead, a reviewing court must evaluate the likelihood, considering the record as a whole,

---

[17] *Hollander*, 406 S.W.3d at 578.

[18] *Id*.

[19] *Id*. at 574-76.

[20] *Cf. Casanova v. State*, 383 S.W.3d 530, 534 & n.18 (Tex. Crim. App. 2012) (concluding that the fact that the evidence was legally sufficient to support the jury verdict does not resolve the egregious harm question under *Almanza*); *Stuhler v. State*, 218 S.W.3d 709, 719 (Tex. Crim. App. 2007) (same).

that a properly instructed jury *would* have found the predicate facts to the requisite level of confidence.

The State made no determined effort to establish the appellant's guilt independently of the Section 28.03(c) presumption, and the evidence that it proffered as predicate facts to support that presumption was purely circumstantial. Therefore, the critical issue at trial was whether the State could prove the predicate fact that the appellant received the "economic benefit" of the diverted services. That, in turn, depended on whether the State showed that power had been diverted to the Cisco house during the periods of time that the evidence also showed that the appellant resided there—an issue vigorously contested at trial.

In finding the evidence to be at least legally sufficient to support the predicate facts, the court of appeals emphasized the fact that the appellant had listed the Cisco house as his residence when he received the minor citation on April 25th. And indeed, the Cisco house may have been the closest thing to a permanent residence he had at that point. But, contrary to the conclusion of the court of appeals, the *great weight* of the evidence does not show that he was actually residing at the Cisco house at that particular time—in fact, quite the opposite. Defensive evidence suggested that he had *not* been living there since at least the latter part of March.[21] Moreover, according to the appellant's girlfriend, during the periods in February

---

[21]

The court of appeals treated as relevant to its sufficiency analysis the fact that the meter box was discovered to have been tampered with on March 4th, and it therefore looked to the evidence showing that the appellant was living in the house shortly before that date. *Hollander*, 406 S.W.3d at 575. For two reasons, we conclude that this was a mistake. First of all, the State's evidence does not show that power was "diverted . . . by installation of two wires for such purpose" on March 4th. Therefore, the evidence could not support a conviction for any tampering that occurred on or before

and March that the appellant *was* living part-time in the Cisco house, the power was turned off. The State presented no evidence to show otherwise. A rational jury could choose, of course, to reject this defensive evidence. But it would be at least equally rational, on a record like this, for a jury to harbor a reasonable doubt that the State had established the predicate fact that the appellant was "receiving the economic benefit of" the diverted electricity in support of the presumption.

**Addressing the Dissent: Does the Application Paragraph Fix the Problem?**

The dissent argues that, considering the application paragraph in the jury charge together with the jury's verdict finding the appellant guilty, it is apparent that the jury necessarily found that he was the one who "tampered" with the electric meter device to the requisite level of confidence without resort to the flawed presumption instruction.[22] From this premise she argues that the appellant suffered no egregious harm. We disagree. The

---

that date under the specific allegations in the indictment as incorporated in the jury charge. Second, and perhaps more critically, there was no evidence that power was "diverted" *at all* on March 4th—the meter had simply been "turned back on," according to the power-company witness. Under these circumstances, the statutory presumption contained in Section 28.03(c) would not seem to apply, since the presumption can apply only to scenarios in which power is "diverted from passing through a metering device[,]" "prevented from being correctly registered by a metering device[,]" or "activated by any device installed to obtain . . . power supply without a metering device." Tex. Penal Code § 28.03(c)(1)-(3).

[22] The application paragraph authorized the jury to convict the appellant in the event that it should find that he:

> did then and there, intentionally or knowingly tamper with tangible property, to-wit: an electric meter device, without the effective consent of the owner, Russ Green, and did then and there cause the pecuniary loss of less than $20,000 to the said owner, and did then and there intentionally or knowingly cause to be diverted, in whole or in part, public power supply by installation of two wires for such purpose[.]

issue to which the presumption speaks is the identity of the person who "tampered"; he who reaped an economic benefit by diverting power around a metering device is he who committed the tampering. But, at least on the facts of this case, the diversion of the public power supply by wiring around the metering device *was* the tampering. The dissenters are mistaken to assert that the jury's resolution of the question of who diverted the power supply would necessarily have occurred independently of its resolution of the question of who committed the tampering with the electric meter device, and was therefore "not tainted" by the erroneous presumption instruction.[23] A juror utilizing the faulty presumption to first find that the appellant was the one who tampered with the electric meter device would almost certainly have regarded itself as likewise authorized to rely on the faulty presumption to find that he was *also* the one who committed that tampering *by diverting the power supply around the metering device by the installation of two wires*—since that *was*, in fact, the tampering that took place. On the facts of this case there is a very tangible danger that the jurors felt free to find *both* that the appellant committed the tampering *and* that he did so in the particular way alleged (*i.e.*, wiring around the metering device)—and *both* to a level of confidence beyond a reasonable doubt—simply because they were told that they could "presume" those facts from the predicate fact that he reaped the economic benefit—but without ever having found that predicate fact itself beyond a reasonable doubt, as the law requires.

---

[23] Dissenting Opinion at 2.

## CONCLUSION

It was never communicated to the jury in any form that it must believe the evidence substantiating the presumption beyond a reasonable doubt before it could convict the appellant. Neither the balance of the jury charge itself nor the conduct of the parties served to correct the deficiency. Moreover, the facts giving rise to the presumption were hotly contested, and we therefore reject both the court of appeals's finding that the great weight of the evidence established the predicate facts and its implicit conclusion that the jury probably would have found those predicate facts to be true to the requisite level of confidence—beyond a reasonable doubt—had it been required to do so. Considering all of these *Almanza* factors, we hold that the error in the jury charge both affected the very basis of the case and deprived the appellant of a valuable right, ultimately depriving him of a fair and impartial trial.[24] The court of appeals erred to conclude otherwise.

Accordingly, we reverse the judgments of the court of appeals and the trial court and remand the cause for a new trial.

DELIVERED:      December 11, 2013
PUBLISH

---

[24] *See, e.g., Stuhler*, 218 S.W.3d at 719.