

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00034-CR

TONIA ELIZABETH ROSS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 66th District Court
Hill County, Texas
Trial Court No. F232-17, Honorable Lee Harris, Presiding

September 24, 2019

OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Bringing two issues for our review, appellant Tonia Elizabeth Ross appeals from her conviction of the state jail felony offense of fraudulent use or possession of identifying information[1] and the resulting sentence of eighteen months of imprisonment in a state jail facility.[2] We will reverse the trial court's judgment and remand the case.

---

[1] Tex. Penal Code Ann. § 32.51 (West 2018).

[2] Tex. Penal Code Ann. § 12.35 (West 2018) (providing that a state jail felony is punishable by confinement in a state jail facility for any term of not more than two years or less than 180 days and a fine not to exceed $10,000).

Background

Appellant's indictment alleged she "did then and there with intent to harm or defraud another, and without the consent of [T.R.], possess less than five items of identifying information to-wit: a social security card ending with the numbers [xxxx] issued to [T.R.]."[3] Appellant pled not guilty.

At appellant's jury trial, the State presented the testimony of two witnesses, T.R. and Hillsboro police officer Mark Kellum. Officer Kellum testified that in early June 2017, he checked the license plate of a vehicle he saw at a gas station and found the registered owner, appellant, had active warrants. He initiated a traffic stop, identified appellant as the person with the warrants, and arrested her. Appellant's husband was in the car, but his driver's license was invalid. Kellum conducted an inventory of the vehicle in preparation for its towing. During the inventory, he found in the back seat a "photo book" that contained a social security card, a Texas health benefits card, a Wells Fargo debit card, and a Netspend MasterCard, all bearing the name of T.R. He also found a Wells Fargo card in the name of another person and a Home Depot card bearing the name of a third person. Also in the back seat, Kellum found a check bearing the name of still a fourth individual. In addition, T.R.'s driver's license was found in appellant's purse when appellant was booked into jail.

T.R. testified she worked as a cashier for a Dollar General Store in Valley Mills, Texas. In late May 2017, she realized her wallet was missing. She testified she last saw her wallet when she put it in her purse before going to work, and that the wallet then

[3] We refer to the complainant by her initials to protect her identity.

contained her driver's license, her social security card, her debit card, her health benefits card, two rings, five dollars, and other items. At work, she left her purse in the employee's break room. Police later returned to T.R. her social security card, driver's license, and other cards. She testified she did not give permission to appellant to possess any of those items. She also told the jury that shortly after her cards were returned to her, appellant came to T.R.'s place of work and told her she did not steal the wallet. Rather, T.R. said, appellant told her she found it in the parking lot. Appellant requested that T.R. not press charges against her.

At the close of the evidence, the jury was provided a charge by the court. It included a statutory presumption as well as definitions of culpable mental states. Appellant did not object to the charge. On appeal, appellant contends the court made two errors in the charge that egregiously harmed her.

Analysis

Standard of Review

We review alleged jury charge error in two steps. *Price v. State,* 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State,* 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). We first determine whether error exists and if so, we evaluate whether sufficient harm resulted from the error to require reversal. *Price,* 457 S.W.3d at 440; *Ngo,* 175 S.W.3d at 743-44. The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Where, as here, the charge error was not properly preserved by an objection or request for instruction, the error must be "fundamental" and requires reversal only if it was "so egregious and created such harm that the defendant

3

was deprived of a fair and impartial trial." *Villarreal v. State,* 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Almanza*, 686 S.W.2d at 171.

Presumption of Specific Intent

By her first issue, appellant complains of the trial court's failure to give the instruction required by Penal Code section 2.05(a)(2), regarding the treatment of a statutory presumption. TEX. PENAL CODE ANN. § 2.05(a)(2).

A person commits the offense of fraudulent possession of identifying information if she, "with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of . . . identifying information of another person without the other person's consent." TEX. PENAL CODE ANN. § 32.51(b)(1). In its charge to the jury, the court instructed that the actor is presumed to have the intent to harm or defraud another if the actor possesses the identifying information of three or more persons. *See* TEX. PENAL CODE ANN. § 32.51(b-1)(1) (providing for such a presumption).

Because the court gave the section 32.51(b-1)(1) presumption instruction, it was required also to instruct the jury pursuant to section 2.05(a)(2) of the Penal Code, which states:

> (2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:
>
> > (A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;
> >
> > (B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

4

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

TEX. PENAL CODE ANN. § 2.05(a)(2).

Without the required instructions from section 2.05(a), the presumption in section 32.51(b-1)(1) is an unconstitutional, mandatory presumption. *See Philbin v. State,* No. 11-16-00015-CR, 2017 Tex. App. LEXIS 12109, at *12 (Tex. App.—Eastland Dec. 29 2017, no pet.) (mem. op., not designated for publication) (citing *Willis v. State*, 790 S.W.2d 307, 309-10 (Tex. Crim. App. 1990); *Webber v. State,* 29 S.W.3d 226, 230 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)). Mandatory presumptions are unconstitutional because they relieve the State of the burden to prove every element of the offense beyond a reasonable doubt. *Garrett v. State,* 220 S.W.3d 926, 930 (Tex. Crim. App. 2007). *See also Clementson v. State,* 492 S.W.3d 802, 805 (Tex. App.—Amarillo 2016, pet. ref'd); *Felkins v. State,* No. 07-17-00218-CR, 2019 Tex. App. LEXIS 4960, at *4 (Tex. App.—Amarillo June 14, 2019, no pet.) (mem. op., not designated for publication). Failure to include a section 2.05(a)(2) instruction along with an instruction on a presumed fact thus gives rise to both statutory and constitutional error. *See Webber*, 29 S.W.3d at 231.

It is undisputed here that the court's charge to the jury included the presumption found in Penal Code section 32.51(b-1)(1) but did not include the instruction set forth in Penal Code section 2.05(a)(2). The trial court erred by omitting that instruction.

Appellant did not object to this error in the court's charge. Therefore, we must reverse the conviction only if we find the error caused appellant to suffer egregious harm.

5

*Philbin,* 2017 Tex. App. LEXIS 12109, at *12 (citing *Bellamy v. State*, 742 S.W.2d 677, 685 (Tex. Crim. App. 1987); *Almanza,* 686 S.W.2d at 171-72). To determine whether appellant suffered egregious harm, we consider: (1) the complete jury charge; (2) the arguments of counsel; (3) the entirety of the evidence, including the contested issues and weight of the probative evidence; and (4) any other relevant factors the record reveals as a whole. *Philbin,* 2017 Tex. App. LEXIS 12109, at *12 (citing *Hollander v. State,* 414 S.W.3d 746, 749-50 (Tex. Crim. App. 2013); *Almanza,* 686 S.W.2d at 171). "Neither party bears a burden of production or persuasion with respect to an *Almanza* harm analysis, the question being simply what the record demonstrates." *Hollander*, 414 S.W.3d at 750.

Considering the jury charge as a whole, it contains the general instruction that the State must prove each element of the charged offense beyond a reasonable doubt. Such a general instruction, however, does not remedy the effect of an improper mandatory presumption. *See id.*

With regard to the evidence the jury heard, the State argues the evidence of the predicate facts giving rise to the presumption, those being appellant's possession of three or more other persons' identifying information, was uncontested at trial. The argument is largely, though not entirely, accurate. There was no dispute that T.R.'s driver's license was found in appellant's purse. Nor was there dispute that T.R.'s social security card and other cards were in the photo book found directly behind the driver's seat of appellant's car. Appellant acknowledged to police the photo book was hers. And T.R.'s uncontradicted testimony that appellant came to her workplace with the story she found T.R.'s wallet in its parking lot further bolsters the evidence of her possession of the items T.R. said were contained in her wallet. The Wells Fargo card and the Home Depot card

6

bearing the names of other individuals were found in the photo book. The check was found in the car's back seat.

Appellant's defense, however, focused not on the predicate facts but on the evidence supporting the presumed facts that she had the intent to harm or defraud another. As the Fourteenth Court of Appeals observed in a case also involving possession of identifying information, omitting section 2.05(a)(2) instructions "causes two significant problems: (1) the jury is never told it must find the predicate fact proven beyond a reasonable doubt before indulging the presumption; and (2) the jury is never told it is not bound to find the presumed fact based on proof of the predicate fact." *Ramirez-Memije v. State,* 466 S.W.3d 894, 898 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing TEX. PENAL CODE ANN. § 2.05(b)(2)(A)-(B); *Hollander,* 414 S.W.3d at 754 (Cochran, J, concurring)). As did the court in *Ramirez-Memije*, 466 S.W.3d at 901, we find appellant was harmed primarily from the second of those two problems, in that the jury was never told it was not bound to find the presumed fact of appellant's intent to harm or defraud another.

Appellant did not testify, and as is often the case, the evidence of her intent was circumstantial. The State presented no evidence that appellant had made, or attempted to make, any use of T.R.'s identifying information. Kellum testified that, so far as his investigation showed, no actual use had been made of the cards. Appellant's counsel also pointed out to the jury in closing argument that the Wells Fargo card had expired some three years prior. And counsel argued no intent to defraud should be inferred from her possession of the Home Depot card because police had been unable to contact its owner to determine whether he consented to her possession of the card.

7

During its argument, the State argued appellant's organization of the cards in the photo book showed appellant was "going to use that for some ill intent." The State also argued appellant's intent was shown through her possession of the items for more than five days, and through her possession of T.R.'s driver's license in a separate place, in appellant's purse. It argued Valley Mills is a small town in which T.R. easily could have been located had appellant intended to return her property. Despite the evidence suggesting T.R.'s wallet was taken from her workplace, the State did not argue to the jury how T.R.'s identifying information came into appellant's possession. The outstanding warrants that led officer Kellum to stop appellant were for traffic violations.

But, the record shows, the State also made heavy use of the statutory presumption in its argument to the jury, referring to the presumption repeatedly. First, the prosecutor said, referring to the charge, "The way you see the [proof of] intent to harm or defraud is on the second page at the top, and it tells you that it is presumed. It's a presumption, ladies and gentlemen. You can just assume it. That's what that means. It is assumed when the person has the identifying information of three or more persons, other persons than themselves." The prosecutor went on to say, "They really have five [persons' information]. That is a presumption. It was not rebutted. They have no burden. The presumption is there. You can assume it." The prosecutor later revisited the presumption, arguing, "What reason have you heard to rebut the presumption in law? None. There is a presumption right here on Page 2. The actor is presumed to have the intent to harm or defraud another if the actor possesses the identifying information of three or more persons or the identifying information concerning three or more persons or a deceased person. There's the law. You can presume the intent. The law says you're to presume

8

the intent." The State later reiterated, saying ". . . also consider that legal presumption where you are to presume the intent to harm or defraud."

Perhaps more damaging to appellant were the State's objections raised during defense counsel's argument. At a point in counsel's argument regarding the State's burden to show an intent to defraud, the State objected that counsel was misstating the law, asserting "the presumption is exactly as written." Later, as counsel argued the State had produced no evidence of appellant's intent to defraud, the prosecutor again objected, stating, "Again, Your Honor, defense counsel is misstating the presumption of the law. . . there is no evidence needed of intent to harm or defraud in the presumption."

We believe also the court's responses to the objections added to the harm to appellant. In both instances, the court instructed the jury that the attorneys' statements were simply arguments and the court's charge would provide the law. After the second objection, the court said, "The law you are bound by is contained in the Court's Charge you have before you and the interpretation that you reasonably apply to it."

In sum, the record shows the circumstantial evidence of appellant's intent largely rested on the predicate facts that give rise to the statutory presumption; the jury was not properly instructed regarding application of the presumption; neither party provided the jury with the information contained in section 2.05(a)(2) necessary to make the presumption permissive; when defense counsel sought to inject into his argument the assertion the State's evidence of intent was lacking, the State aggressively objected, pointing to the presumption; and the court, in response, merely again pointed the jury to

the inadequate jury charge.[4]  The State's argument and objections and the court's response reinforced to the jury the binding nature of the presumption.  *See Ramirez-Memije,* 466 S.W.3d at 900 (similar conclusion, citing *Hollander,* 414 S.W.3d at 750-51).

Charge error is egregiously harmful "if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory."  *Villarreal,* 453 S.W.3d at 433.  We find the unobjected-to charge error, particularly as it was exacerbated by the State's argument to the jury and its objections to appellant's counsel's argument, deprived appellant of the valuable right of proof of every element of the charged offense beyond reasonable doubt, thus depriving her of a fair and impartial trial.  *See Hollander*, 414 S.W.3d at 753; *see also Hollander*, 414 S.W.3d at 756 (Cochran, J., concurring) (describing the "grave likelihood" that jury charge omitting section 2.05(a)(2) instruction will cause egregious harm).  The record demonstrates egregious harm to appellant flowed from the court's erroneous instruction to the jury to apply an unconstitutional mandatory presumption.  *See Ramirez-Memije,* 466 S.W.3d at 901-02 (like conclusion).

We sustain appellant's first issue.

Culpable Mental States

In light of our disposition of appellant's first issue, we need not reach appellant's second issue in which she contends the trial court failed to properly instruct the jury

---

[4] The presumption also was discussed during voir dire, but that discussion contains nothing that would ameliorate the omission of the section 2.05(a)(2) instruction.  The impact of the State's discussion of the presumption is seen through the statement of one of the panel members concerning the inference to be drawn from possession of other persons' identifying information.  The member responded, "Well, you can certainly question if there was just one; two it more validates it; and three makes it seem like a sure thing, more or less."  The panel member accurately understood the State's view that the presumption's predicate facts establish "a sure thing."

regarding the culpable mental states applicable to the charged offense.  TEX. R. APP. P. 47.1.

Conclusion

The judgment of the trial court is reversed, and the case is remanded for further proceedings.

James T. Campbell
Justice

Publish.