**AFFIRMED; Opinion Filed December 27, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01166-CR

### JOSE BLANCO-LAZO, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F14-34222-J**

# MEMORANDUM OPINION
Before Justices Lang, Myers, and Evans
Opinion by Justice Myers

A jury convicted appellant Jose Blanco-Lazo of sexual assault of a child under the age of fourteen and set punishment at forty-four years in prison and a $10,000 fine. In three issues, he alleges jury charge error and insufficiency of the evidence. We affirm.

## BACKGROUND AND PROCEDURAL HISTORY

The complainant in this case testified that, in July of 2014, she lived in a four bedroom trailer with her mother, step-father, and a friend of her mother's, Rosa. Appellant, known to the complainant as Ruben, and his common law wife, Bessie, also lived in the trailer. Appellant had moved into the trailer in 2010. The complainant liked appellant and thought he was handsome. Bessie and the complainant, however, did not get along very well. The complainant's mother testified that her daughter once told her that Bessie "had scolded her because she had tried to go get close" to appellant, and that Bessie was jealous.

The complainant testified that the first instance of sexual abuse occurred when she was approximately eight years old. Appellant touched her on her vagina over her clothes, which felt "[a] little bit good and weird." The complainant also testified about another occasion when appellant tried to convince her to have sex with him and she refused. He convinced her to lie on the floor on her side outside of his bedroom door and reached his fingers through the crack under the door and penetrated her vagina. She described it as feeling "[g]ood and weird and hurtful, too." She said she did this "because [appellant] told me to." The complainant said this occurred when she was approximately eleven or twelve years old. On that same day, she went into his room when he asked her to and he started to touch and kiss her; she left the room when someone knocked on the door. The complainant testified that appellant touched her vagina and "boobs" and kissed her on the mouth and neck. Appellant asked her if she wanted him to put his "dick" inside of her vagina but she told him no, fearing pregnancy, diseases, and "stuff."

The complainant testified about another incident when appellant came into her room and put his finger in her vagina and licked her "boobs." This also took place when the complainant was about eleven or twelve years old. On another occasion, he positioned her upside down on the couch, pulled down her pants and underwear, and licked her vagina. This was the first time appellant had licked her vagina; the complainant recalled that it felt "good and weird." The complainant testified she was twelve years old when this occurred. She testified that appellant stopped licking her vagina when they heard the sound of her mother's car approaching the trailer, and he ran into his bedroom. The complainant then went to her room and applied perfume to her body so that her mother would not notice anything was wrong. The complainant also described another time when she was in the kitchen with appellant. He pulled down her pants and underwear, positioned her standing with her legs open, and licked her vagina. When she got tired, she told him to stop, which he did. She testified that she was twelve when this occurred.

Another incident occurred one night when Bessie was not home. Appellant told the complainant to go to his room. The complainant testified that, while they were clothed, appellant "tried to put his thing on my part." He also removed her pants and underwear and licked her vagina. He tried to convince her to have sex with him, but she became angry when he kept asking her for sex despite her refusal, and she left the room. The complainant did not recall how old she was when this occurred.

On July 29, 2014, the complainant, then eleven years of age, was watching television on the couch in the living room of the trailer. Her mother was asleep in her bedroom, Rosa was in her bedroom, and appellant and Bessie were in their bedroom. The complainant testified that appellant came out of his room approximately four times while the complainant was on the couch. Each time, he would touch the complainant on her breasts and vagina with his hands—on both the outside and inside of her clothes. Appellant also touched the complainant on the inside of her vagina. The complainant asked appellant if Bessie was coming; he told her no. Appellant asked the complainant if his touching felt good. She told him no.

At some point Bessie came into the living room and asked the complainant if she was having "a relationship" with appellant. Bessie was angry and yelling. At first, the complainant denied that she was having "a relationship" with appellant. As Bessie continued to question her, the complainant stated that they did have "a relationship" and, after further questioning, that there was nothing between them but that appellant was harassing her.

The noise woke up the complainant's mother, who came out into the living room to see what was the matter. The complainant's mother asked Bessie what was happening, and Bessie told her that nothing was happening—they were just talking. Bessie went back to her bedroom. She appeared to be upset and jealous, according to the complainant's mother. When the complainant's mother asked her what was going on, the complainant denied that anything was

–3–

wrong. But her mother could tell she was upset, and she looked like she was about to cry. The complainant's mother asked her again what was happening, and the complainant said appellant had been touching her. The complainant looked like she wanted to cry and went to her room. Something about her daughter's expression made the complainant's mother believe her. She went to appellant's bedroom, knocked on the door, and asked him to come out and tell her what had happened. The complainant's mother could hear Bessie telling appellant to open the door, but he refused to come out. Appellant's refusal to speak with her convinced the complainant's mother that something had happened. She called the police.

The complainant testified that she had previously told her mother about the abuse, but her mother did not believe her, which made the complainant feel "[s]ad and disappointed." The complainant also told her father and a friend that appellant was touching her. Her father, who lived out of state, told the complainant to tell her mother. The complainant's mother testified that, approximately one year before the July 2014 incident that led to appellant's arrest, the complainant had told her that appellant was touching her. The complainant's mother confronted appellant, and he swore nothing had happened. The complainant's mother did not contact the police.

The complainant testified that it was not easy to remember all of the times when appellant had touched her because she did not like to think about it or talk about it. She testified that the event that stood out the most in her mind was the night when the police arrested appellant. On cross-examination, the complainant testified that she did not remember telling the police that appellant had tried to touch her that night, but she was able to stop him. The complainant also testified that she had been seeing a counselor for several years, and that she told the counselor about the abuse after appellant was arrested. Asked on cross-examination if she had ever told anyone that someone other than appellant touched her inappropriately, the

complainant replied, "Yes."

Irving Police Officer Jonathan Long was on patrol with his partner on the night of July 29, 2014, when he was dispatched to the trailer where the complainant lived to investigate a sexual assault. When they arrived at the scene, Officer Long first tried to speak with appellant, but the officer, who did not speak Spanish, had difficulty communicating with him. Despite the language barrier—Officer Long could understand a few words of basic Spanish from his training at the academy and eight years in the Irving Police Department, and appellant spoke some English—Officer Long was able to gather some information from appellant. He told Officer Long the only thing that happened between him and the complainant that night was that the complainant asked him to get her some sort of snack and he refused.

Officer Long next spoke with the complainant and the complainant's mother. Because the complainant's mother did not speak English, Officer Long spoke to the complainant and her mother together and the complainant translated what her mother was saying. Officer Long testified that the complainant told him appellant attempted to touch her chest and vagina when she was on the couch, but she was able block his hands and then ran and told her mother. Officer Long recalled that the complainant looked as though she had been crying and that she seemed genuinely scared and sincere as she told him about this and other past incidents of abuse by appellant. Officer Long questioned the complainant further to determine if a sexual assault had occurred. She told him that, on the previous evening, appellant had inserted his finger into her vagina against her will. She also told him it was not the first time appellant had done this and that he had made comments to her about wanting to have sex with her and perform oral sex on her. Appellant was arrested that night and taken to jail.

The complainant was forensically interviewed by Nakisha Biglow at the Irving Family Advocacy Center on July 30, 2014. The complainant was eleven years of age at the time of the

interview. She told Biglow appellant had sexually abused her starting when she was ten years old. She described instances when she would be laying on the couch and appellant would touch her on her "boobs" and her "part" both on top of and under her clothes. Biglow added that when the complainant referred to her "part," she was referring to her vagina.

The complainant detailed one occasion when appellant told her to take a shower. She refused at first, but then she complied and got into the shower. Appellant entered the bathroom while she was in the shower but left when she told him to get out. The complainant got out of the shower and wrapped herself in a towel. When she left the bathroom, appellant was waiting for her in the hall and convinced her to remove her towel. He laid her on the floor and licked her vagina, which the complainant said felt "weird." He also put his fingers inside of her, which she described as feeling "weird," and that it hurt.

The complainant described another occasion when appellant pulled down her pants and panties and licked her "boobs." The complainant asked Biglow if appellant's penetration of her with his fingers meant that she was no longer a virgin. The complainant also described the sensation of appellant touching her vagina with his hand as feeling like he had put water on her privates. The complainant told Biglow that the day before the interview appellant tried to touch her, but his then-girlfriend saw him and confronted her about it. The complainant told Biglow that appellant had sexually abused her so many times she could not specifically remember each time, but it was something that would happen all the time and many of the instances occurred when she was on the couch.

Appellant was indicted for continuous sexual abuse of a child under the age of fourteen. *See* TEX. PENAL CODE ANN. § 21.02. The alleged acts of sexual abuse were indecency with a child by contact and aggravated sexual assault of a child under the age of fourteen. *See id.* §§ 21.02(c)(2), 21.02(c)(4). The indictment alleged appellant committed indecency with a child by

touching the complainant's genitals with his hand. *See id.* §§ 21.11(a)(1), 21.11(c)(1). Appellant was alleged to have committed aggravated sexual assault of a child, according to the indictment, by (1) penetrating the complainant's sexual organ with his finger and (2) causing his mouth to contact the complainant's sexual organ. *See id.* §§ 22.021(a)(1)(B)(i), (a)(1)(B)(iii), (a)(2)(B). The jury convicted appellant of the lesser-included offense of aggravated sexual assault of a child and set punishment at forty-four years in prison and a $10,000 fine. This appeal followed.

## DISCUSSION

### I. Absence of Unanimity Instruction

In his first issue, appellant contends the trial court violated his right to a unanimous jury verdict by allowing the jurors to convict him of the lesser-included offense of aggravated sexual assault of a child without requiring them to agree on a specific instance of conduct and on a specific statutory alternative.

When analyzing a claim of jury charge error on appeal, we first determine if there was an error, and if so, whether the error caused sufficient harm to warrant a reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Under *Almanza*, the amount of harm necessary to warrant a reversal depends on whether the appellant objected to the alleged error in the jury charge. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988). If the appellant objected to the complained-of portion of the jury charge, then the record need only show he suffered some harm as a result of the error to obtain a reversal. *Reeves*, 420 S.W.3d at 816; *Ngo*, 175 S.W.3d at 743. But if the appellant failed to object to the complained-of error, he must show he suffered egregious harm to be entitled to a reversal. *Reeves*, 420 S.W.3d at 816; *Ngo*, 175

S.W.3d at 743. In determining whether the appellant suffered egregious harm, we consider (1) the complete jury charge; (2) the arguments of counsel; (3) the entirety of the evidence, including the contested issues and weight of the probative evidence; and (4) any other relevant factors revealed by the record as a whole. *Hollander v. State*, 414 S.W.3d 746, 750 (Tex. Crim. App. 2013).

Jury unanimity is required in all criminal cases. TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). In Texas, the jury must "reach a unanimous verdict about the specific crime that the defendant committed." *Cosio*, 353 S.W.3d at 771. This means "the jury must agree upon a single and discrete incident that would constitute the commission of the offense alleged." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). The unanimity requirement ensures the jury agrees on the factual elements underlying the charged offense, not that it merely agrees that a statute was violated. *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000). "[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Cosio*, 353 S.W.3d at 772. Each of the multiple incidents establishes a different offense or "unit of prosecution." *Id.* In such a situation, it is the trial court's responsibility to ensure unanimity by instructing the jury in the charge that its verdict must be unanimous as to a single incident offense or unit of prosecution among those presented by the State. *Id.*

The Texas Court of Criminal Appeals has recognized three variations that may result in non-unanimous verdicts: (1) "non-unanimity may occur when the State presents evidence demonstrating the repetition of the same criminal conduct, but the actual results of the conduct differed"; (2) "non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions";

and (3) "non-unanimity may occur when the State charges one offense and presents evidence of an offense, committed at a different time, that violated a different provision of the same criminal statute." *Cosio*, 353 S.W.3d at 771–72.

Appellant was charged with continuous sexual abuse of a child. The jury charge included instructions on the lesser-included offenses of indecency with a child and aggravated sexual assault of a child. Neither side objected to the charge, which provided in part as follows:

> Our law provides that a person commits the offense of Aggravated Sexual Assault of a child if the person intentionally or knowingly causes the *contact or penetration* of the mouth, anus or sexual organ of the child *by the sexual organ* of another person, including the actor, and at the time of the offense the child is younger than 14 years of age.
>
> . . . .
>
> You are further instructed that in order to find the defendant guilty of the offense of Continuous Sex Abuse of a Child, *you are not required to agree unanimously* on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. However, in order to find the defendant guilty of the offense of Continuous Sex Abuse of a Child, you must agree unanimously that the defendant, during a period that is 30 or more days in duration, beginning on or after September 1st, 2007, committed two or more acts of sexual abuse.
>
> . . . .
>
> Now, bearing in mind the foregoing instructions, if you find and believe from the evidence, beyond a reasonable doubt, that the defendant, JOSE BLANCO LAZO, on or about the 29th day of July, 2014 in the County of Dallas, State of Texas, did then and there, intentionally or knowingly, during a period that was 30 or more days in duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [the complainant], a child younger than 14 years of age, hereinafter called complainant, namely by: the *penetration of the complainant's female sexual organ by the Defendant's finger or by contact between the mouth of the defendant and the sexual organ of the complainant or by the contact between the hand of the Defendant and the genitals of the complainant with the intent to arouse or gratify the sexual desire of the Defendant*, then you will find the defendant guilty of the offense of Continuous Sex Abuse of a Child, as charged in the indictment.
>
> If you do not so believe, or if you have a reasonable doubt thereof, then you will acquit the defendant of the offense of Continuous Sex Abuse of a Child and consider next whether the defendant is guilty of the lesser included offense of Aggravated Sexual Assault of a Child, as included in the indictment.

"Aggravated Sexual Assault of a Child" is defined on Page 2 of this Charge and has the same meaning here.

Now, if you find and believe from the evidence, beyond a reasonable doubt, that the defendant, JOSE BLANCO LAZO, on or about the 29th day of July, 2014 in the County of Dallas, State of Texas, did then and there, intentionally or knowingly cause *the penetration of the sexual organ of* [the complainant], a child, hereinafter called complainant, who was not then the spouse of Defendant, *by the finger* of the Defendant *or cause contact between the mouth of the Defendant and the sexual organ of the complainant*, and, at the time of the offense, the child was younger than 14 years of age, then you will find the defendant guilty of the offense of Aggravated Sexual Assault of a Child, as included in the indictment.

. . . .

After you retire to the jury room, you will select one of your members as foreperson. It is the foreperson's duty to preside at your deliberations, vote with you, and *when you have unanimously agreed upon a verdict*, to certify to your verdict by using the appropriate form attached hereto, and signing the same as foreperson.

. . . .

After you have reached a *unanimous* verdict or if you desire to communicate with the Court, please use the jury call button on the wall and one of the bailiffs will respond [emphasis added].

The State concedes that the jury charge instructions for the lesser-included offense of aggravated sexual assault permitted a non-unanimous verdict based on the evidence presented in this case. The jury had multiple options for finding that appellant committed aggravated sexual assault, yet like the charge in *Cosio*, the charge in appellant's case failed to instruct the jury that its verdict had to be "unanimous as to a single offense or unit of prosecution among those presented." *Cosio*, 353 S.W.3d at 771–72. The jury, in other words, was not required to agree on "a single and discreet incident." *Id.* at 771. This was error. We must now turn to the question of whether appellant suffered egregious harm.

### 1. The Entire Jury Charge

Applying the various factors, the court of criminal appeals has repeatedly noted that, when more than one incident of criminal conduct could be relied on for conviction, generic

language regarding unanimity is insufficient to apprise the jury of the unanimity requirement. *See Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (noting that several generic requirements of unanimity cannot ensure a unanimous verdict when there is evidence of multiple incidents); *Casio*, 353 S.W.3d at 773 ("Although the instruction's 'boilerplate' section informed the jury that it must be unanimous, the jury could have understood it to mean that they had to be unanimous about the offense in general, not a particular incident comprising the offense."). Because the charge had only generic references to unanimity, this factor weighs in favor of a finding of egregious harm. *See Arrington*, 451 S.W.3d at 841.

## 2. The Entirety of the Evidence

Under this factor, "we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *Id*. Appellant argues that the jury's rejection of the offense of continuous sexual abuse shows they did not find the complainant to be credible and that this should support a finding of egregious harm. It is apparent from the record that the complainant's testimony regarding the time frame for the abuse was unclear and uncertain. For example, the complainant testified that some of the incidents of sexual abuse occurred when she was twelve, but the complainant was only eleven years of age on the date appellant was arrested—she turned twelve several months later. The complainant also testified she did not recall precisely when different instances of sexual abuse occurred. Based on this, the jury may have simply concluded that the element of the length of time needed to convict appellant of continuous sexual abuse was not proven beyond a reasonable doubt. Even so, however, the complainant testified in detail about numerous instances of sexual abuse that would support the conviction for the lesser-included offense of aggravated sexual assault. Furthermore, appellant's theory of the case was that the complainant was mentally unstable and that she fabricated the allegations of abuse. Thus, appellant's trial strategy left the jury with an

–11–

all-or-nothing decision when evaluating the alleged conduct—either he was guilty or he was not. *See Ruiz v. State*, 272 S.W.3d 819, 826–27 (Tex. App.—Austin 2008, no pet.) (citing *Warner v. State*, 245 S.W.3d 458, 461–62 (Tex. Crim. App. 2008)); *see also Arrington*, 451 S.W.3d at 842. If the jury had believed appellant's theory, it would have found him not guilty of aggravated sexual assault. Instead, in finding him guilty, the jury necessarily found the complainant to be credible and disbelieved appellant's defense. We therefore conclude this factor does not support a finding of egregious harm.

### 3. The Arguments of the Parties

Under this factor, we must determine whether any statements made by the State, appellant's trial attorneys, or the trial court exacerbated or ameliorated the error in the charge. *Arrington*, 451 S.W.3d at 844.

Neither side referenced unanimity during opening statements. The State's closing argument focused primarily on the charged offense of continuous sexual abuse of a child. The State told the jury they did not have to be unanimous regarding which offenses constituted continuous sexual abuse as long as they were unanimous that there were two or more offenses over a thirty-day or longer period. The State did not make any statements regarding unanimity as to the lesser-included offenses in the charge. Defense counsel argued the complainant was not credible and that nothing occurred between appellant and the complainant. Defense counsel did not refer to unanimity.

The jury potentially could have understood the State's argument to mean they did not have to be unanimous regarding the lesser-included offenses, given the lack of a jury instruction to the contrary. But there is no evidence in this record to establish jury confusion and, accordingly, this shows only theoretical and not actual harm. *See Carter v. State*, No. 04–15–00319–CR, 2016 WL 2595071, at *8 (Tex. App.—San Antonio May 4, 2016, no pet.) (mem. op.,

not designated for publication) (finding that State's argument, which discussed unanimity regarding charge of continuous sexual abuse but not the charges of indecency, showed only theoretical as opposed to actual harm). Consequently, this factor weighs neither for nor against a finding of egregious harm. *Id.* (citing *Arrington*, 451 S.W.3d at 844).

### 4. Other Relevant Factors

During voir dire, the State read the indictment and then explained the elements of continuous sexual abuse to the panel, including the separate alleged sexual offenses. The State later gave the following explanation of the unanimity requirement regarding continuous sexual abuse:

> So let's go back to something I want to make sure I made clear. On the indictment, there were three different acts alleged, okay? The first act was penetration of the complainant's female sexual organ by the defendant's finger and by contact between the mouth of the defendant and the sexual organ of the complainant.
>
> And my 'ands' are 'or' when I'm reading this, okay? You know what I mean? It doesn't mean all three. And by the contact between the hand of the defendant and the genitals of the complainant with the intent to arouse and gratify the sexual desire of the defendant.
>
> So for the purposes of this case, it's continuous, right? We've alleged that during a period that was 30 or more days in duration that these two or more things happened. Understand that when we get you in the box and as a jury, you don't have to be unanimous on which two of the three things took place.
>
> A few of you could agree that it was mouth to vagina, a few of you could agree that it was hand to genitals, or a few of you could agree that it was penetration of the female sexual organ of the defendant.
>
> You don't have to be unanimous on what exactly the acts were. You just have to agree that two or more of the acts took place in a period that exceeded 30 days. Are we clear on that?
>
> (Panel members respond.)
>
> [PROSECUTOR]: It can be a combination of the sex acts, just one time or two or more times, as long as y'all are unanimous in the combination—in that these offenses have happened, doesn't matter which two of three; you just have to be unanimous that they did, in fact, happen and that it was a period that exceeded 30 days or more. We all understand?

–13–

The State then explained the lesser-included offenses, including the two alleged aggravated sexual assault offenses and their respective punishment ranges. A panel member asked if the punishments were "additive" for each offense if the separate offenses were proven. The relevant portion of the record reads as follows:

> VENIREPERSON: Are the punishments additive for each offense? So say two offenses were—you could only say the defendant was guilty after trial if two—you're saying if two were proven to the jury and they were unanimously voted in that response.
>
> But are—is the punishment additive, meaning that if you have five to 99 years, are there two counts of five to 99 years and that's additive, or does that mean that—you know, do they stand by themselves or is it just together?
>
> [PROSECUTOR]: I believe the answer to the question is as far as being additive, the way it is proven on its face kind of makes it additive because it's been three—two or more have been alleged. So that would have to be proven.
>
> So you as the jury would go back and decide that only one was proven, then you get to the individual counts where maybe you just have aggravated sexual assault of a child because you believe it was *mouth to vagina or finger into vagina, something to that effect*.
>
> That's when it starts to break out. But on the face of this indictment, it's—they're all proven, so that's—I think that's the additive you're asking about, and that's why it starts at 25 [emphasis added].

Appellant argues that the State's statement "mouth to vagina or finger into vagina, something to that effect," could have erroneously instructed the jury that they could convict on the lesser-included offenses without being unanimous. But nothing in the State's response to panel member's question indicated that the jury's verdict on a lesser-included offense could be without unanimity as to a single offense. Additionally, the prosecutor stated that if the jury found "only one" offense occurred, they would reach the lesser-included offenses. The discussion concerned punishment, not guilt, and the State's focus was on explaining how the individual offenses combined to create the offense of continuous sexual abuse with a minimum punishment of twenty-five years. Furthermore, the trial court subsequently explained the issue to the jury as follows:

THE COURT: Now, you may very well decide that we don't believe that he committed these offenses over a 30-day period of time, and that's an element of the offense that the State has to prove. If you don't believe that he committed these offenses over a 30-day period of time, then you may very well find the defendant not guilty of that offense, continuous sexual abuse of a child.

But you may believe that the defendant committed one offense of aggravated sexual assault of a child, then you would find the defendant guilty of a lesser-included offense of aggravated sexual assault of a child.

Is that—does that make sense? And if you found him guilty of—if you found the defendant guilty of the lesser-included offense, then you would then have to assess punishment between a range of five to 99 years or life. Okay?

So to the—it's additive in the sense that if there's two offenses and they're over that period of time, then it is 25 to life. Okay? But if it's—if you determine that it's only one offense, then it is five to 99 or two to 20, depending on the range of punishment on that particular offense.

Does that—does that help you-all in any way? Okay. All right. Go ahead. I'll give you ten more—15 more minutes

We again note that the context of the trial court's words was explaining the applicable punishment ranges. Neither the State nor the court told the venire that if they found appellant guilty on only a single offense, they did not have to be unanimous. Rather, they each stressed it would be a single offense of the types alleged, as opposed to the multiple offenses needed to find continuous sexual abuse. While the State's statement could have led jurors to believe they could convict on the lesser-included offenses without being unanimous, this is speculative and, thus, will not support a finding of egregious harm. *See id.* (citing *Arrington*, 451 S.W.3d at 840).

### *Consideration of the Four Factors*

The only factor here that weighs in favor of finding egregious harm is the consideration of the entirety of the jury instructions—and the absence of any non-generic language regarding unanimity. In *Arrington* and *Cosio*, the court of criminal appeals found no egregious harm even though, in both cases, that factor weighed in favor of egregious harm. *See Arrington*, 451 S.W.3d at 840–45; *Cosio*, 353 S.W.3d at 777–78; *see also Carter*, 2016 WL 2595071, at *9. Therefore, we conclude the trial court's failure to provide a proper instruction on unanimity did

–15–

not cause appellant egregious harm. *See Arrington*, 451 S.W.3d at 840–45; *Cosio*, 353 S.W.3d at 777–78. Although the jury charge failed to instruct that the jurors must agree unanimously on a single offense or unit of prosecution, analysis of the remaining factors shows appellant did not suffer egregious harm. We overrule appellant's first issue.

## II. Enlargement of the Alleged Offense

In his second issue, appellant contends the trial court enlarged the indictment by defining aggravated sexual assault as including penile penetration of the complainant's vagina.

The indictment against appellant alleged that, on or about July 29, 2014, in Dallas County, Texas, he did then and there

> intentionally and knowingly, during a period that was 30 or more days in duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [the complainant], a child younger than 14 years of age, hereinafter called complainant, namely by: the penetration of the complainant's female sexual organ by the Defendant's finger and by contact between the mouth of the defendant and the sexual organ of the complainant and by the contact between the hand of the Defendant and the genitals of the complainant with the intent to arouse and gratify the sexual desire of the Defendant[.]

The indictment included two possible manners and means of committing aggravated sexual assault of a child as components of the offense of continuous sexual abuse of a child: (1) penetration of the sexual organ of the complainant by the finger of appellant; and (2) contact between the mouth of appellant and the sexual organ of the complainant. *See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(i) (causing penetration of the sexual organ of a child by any means), 22.021(a)(1)(B)(iii) (causing the sexual organ of a child to contact or penetrate the mouth of the actor). However, the definition of aggravated sexual assault that was included in the abstract portion of the jury charge did not track the language of the indictment. It stated:

> Our law provides that a person commits the offense of Aggravated Sexual Assault of a child if the person intentionally or knowingly causes the contact or penetration of the mouth, anus or sexual organ of the child by the sexual organ of another person, including the actor, and at the time of the offense the child is

–16–

younger than 14 years of age.

This is a correct statement of the offense under the law, but it does not relate to the offense as charged in the indictment. Nonetheless, the application paragraphs for both the charged offense of continuous sexual abuse of a child and the lesser-included offense of aggravated sexual assault of a child tracked the language of the indictment and made no reference to penile penetration. Appellant did not object to the language in the definition in the charge.

It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012); *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996); *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995). The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Crenshaw*, 378 S.W.3d at 466; *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234(Tex. Crim. App. 1997). An abstract charge on a theory of law that is not applied to the facts does not authorize the jury to convict upon that theory. *Crenshaw*, 378 S.W.3d at 466; *Hutch*, 922 S.W.2d at 172; *Campbell*, 910 S.W.2d at 477. Generally, reversible error occurs in the giving of an abstract instruction only when the instruction is an incorrect or misleading statement of a law that the jury must understand in order to implement the commands of the application paragraph. *Crenshaw*, 378 S.W.3d at 466; *Plata*, 926 S.W.2d at 302.

The jury is presumed to have understood and followed the court's charge, absent evidence to the contrary. *Crenshaw*, 378 S.W.3d at 467. In the instant case, the application paragraph tracked the language of the indictment and properly directed the jury only to the acts of sexual abuse authorized by the indictment. In determining whether the jury charge improperly expanded on the allegations in the indictment, and in conducting a harm analysis, the proper

focus is on the language in the application paragraph. *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013). "Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). Thus, we conclude appellant did not suffer egregious harm. Appellant's second issue is overruled.

### III. Sufficiency of the Evidence

In his third issue, appellant argues the evidence is insufficient to support his conviction for aggravated sexual assault of a child.

We review the sufficiency of the evidence of a criminal offense by viewing the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Jackson v. Virginia*, 443 U.S. 307 (1979); *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). The factfinder has the duty to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Clayton*, 235 S.W.3d at 778. As a result, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id*. When the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Id*. Direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id*.

As we summarized earlier, the record in this case shows that the complainant described multiple instances of sexual abuse that support appellant's conviction for aggravated sexual assault of a child. The child victim's testimony alone is sufficient to support a conviction for

aggravated sexual assault of a child or indecency with a child.  TEX. CODE CRIM. PROC. ANN. art. 38.07; *Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.); *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *see also Cantu v. State*, 366 S.W.3d 771, 775 (Tex. App.—Amarillo 2012, no pet.).   It was the jury's role, as the finder of fact, to make credibility determinations and reconcile conflicts in the evidence.  Viewing the evidence under the proper standard, we conclude a rational trier of fact could find beyond a reasonable doubt that appellant committed aggravated sexual assault of a child.  Hence, the evidence is sufficient to sustain the conviction.  We overrule appellant's third issue.

        We affirm the trial court's judgment.


                                                        /Lana Myers/
                                                        LANA MYERS
                                                        JUSTICE


Do Not Publish
TEX. R. APP. 47
151166F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSE BLANCO-LAZO, Appellant

No. 05-15-01166-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F14-34222-J.
Opinion delivered by Justice Myers. Justices
Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of December, 2016.