**Opinion filed December 29, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00015-CR

_____

### LANCE THOMAS PHILBIN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11652-D**

### M E M O R A N D U M   O P I N I O N

The jury convicted Lance Thomas Philbin of fraudulent possession of identifying information of fifty or more items. TEX. PENAL CODE ANN. § 32.51(b)(1), (b-1), (c)(4) (West 2016). The trial court assessed his punishment at confinement for a term of seventeen years. Appellant presents four issues on appeal. We affirm.

In Appellant's first and second issues, he asserts that the evidence is insufficient to sustain his conviction because the State did not prove that Appellant possessed the identifying information of Christopher Juarez and did not prove that Appellant possessed fifty or more total items of identifying information. In Appellant's third issue, he argues that the trial court provided an erroneous jury charge that egregiously harmed him because it allowed the jury to presume that he had the intent to defraud because he possessed the identifying information of three or more persons. In his fourth issue, Appellant argues that the trial court erred when it admitted unauthenticated evidence.

On the night of the offense, Katie Snell, an officer with the Abilene Police Department, pulled over a vehicle because its driver failed to stop at two flashing red lights. When Officer Snell approached the vehicle, she saw that Appellant was the driver and that there was a female passenger, whom law enforcement later identified as Michelle Robshaw. Officer Snell noticed that the vehicle had Florida license plates, and she asked Appellant and Robshaw if they were lost. They responded that they were lost and were looking for a hotel for the night. However, Officer Snell noticed that they had a phone, and she could see "that the GPS said they were headed to Fort Worth."

Officer Snell testified that, as she began to talk to them, what they told her about where they had come from and where they were going "was not making sense." Appellant and Robshaw told Officer Snell that they "had just come from the state next to California," but Appellant then told Officer Snell that they had come from New Mexico. Officer Snell asked Appellant if he meant Arizona, and Appellant replied that they had come from Arizona and were on their way to Florida.

Officer Snell asked Appellant and Robshaw for identification. Appellant said that he did not have any identification on him, but he provided Officer Snell with his

2

name and a social security number. Robshaw provided Officer Snell with a driver's license with the name Limor Simi Davis on it, which she obtained from the driver's-side door. However, Officer Snell did not believe that Robshaw was the person pictured on the license. Officer Snell testified that she smelled an odor of burning marihuana emanate from the vehicle and that Appellant and Robshaw appeared to be "high or stoned." Officer Snell ran a "standardized check" in an attempt to identify Appellant with the social security number he had provided, but she did not get a "return" and was unable to identify him.

After Don Allen, another officer with the Abilene Police Department, arrived to assist her, Officer Snell had Appellant get out of the vehicle. Officer Snell testified that Appellant's "voice seemed to quiver like he was extremely nervous." Officer Snell told Appellant that she and Officer Allen were going to search him, Robshaw, and the vehicle, to which Appellant replied that they "could search whatever [they] wanted."

When she searched Robshaw, Officer Snell found a check registered to Christopher Juarez, Juarez's driver's license, and other identifying information in her bra. Juarez testified at trial that his car had been broken into that night and that someone had stolen his wallet, which contained his driver's license, credit card, a blank check, and other items. Juarez said that police eventually returned these items to him. Officer Snell also found a substance that she believed to be marihuana; she also found a handgun. Officer Snell and Officer Allen arrested Robshaw and Appellant.

When Officer Snell searched the vehicle, she found "remnants" of marihuana and "a large amount of cash scattered throughout the vehicle in the center console." Robshaw told Officer Snell that there was "about $700 scattered" in the vehicle. Law enforcement eventually collected $937 from the vehicle. Officer Snell also

found the rental information for the vehicle and learned that it had been rented to Robshaw's mother. Law enforcement transported the vehicle to the Law Enforcement Center so that they could further search the vehicle.

At the Law Enforcement Center, Sandra Lewis, an officer with the Abilene Police Department, helped search the vehicle. Officer Lewis testified that she found a pencil box underneath the passenger seat that contained "multiple different IDs" and "credit cards in different people's names." Officer Lewis also testified that she found a gallon ziplock bag in the glove box; the bag contained "multiple checks and checkbooks" with "different people's names . . . on them." The State introduced items from the pencil box and ziplock bag into evidence during trial.

Law enforcement also found credit or debit card information and an address for a person named Sarah Silvernail in Appellant's backpack. In addition to items of identifying information, officers found a bag that contained wigs and clothes. Law enforcement also obtained cell phones from the vehicle. Gary Castillo, an agent with the Abilene Police Department, obtained a search warrant for the cell phones, which included Robshaw's cell phone. Agent Castillo testified that, based on the information that he was able to download from Robshaw's cell phone, Appellant and Robshaw had communicated at least two weeks before the stop.

In his first and second issues, Appellant argues that the evidence was insufficient to sustain his conviction because the State did not prove that Appellant possessed the identifying information of Christopher Juarez, as alleged, or that Appellant possessed fifty or more total items of identifying information. To prove the offense of fraudulent possession of identifying information under Section 32.51(b)(1), the State must show that the defendant, "with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of . . . identifying information of another person without the other person's consent." PENAL

4

§ 32.51(b)(1). Section 32.51 defines "identifying information" as "information that alone or in conjunction with other information identifies a person, including a person's . . . unique electronic identification number, address, routing code, or financial institution account number." *Id.* § 32.51(a)(1)(C).

In this case, the State alleged in the indictment that, on or about January 24, 2015, Appellant "did then and there, with intent to harm or defraud another, obtain, possess, transfer or use one or more items of identifying information of Christopher Juarez and without" his consent, "to wit: –Texas Drivers' Licenses, a Social Security card, a credit card, and a check." The State also alleged in the indictment that Appellant "obtained, possessed, transferred, or used" fifty or more items of identifying information of other persons. Therefore, to obtain a conviction for the first-degree felony offense of fraudulent possession of identifying information, the State had to prove that Appellant possessed at least one item of identifying information of Christopher Juarez without his consent; that he did so with the intent to harm or defraud Christopher Juarez or another person; and that he also obtained, possessed, transferred, or used fifty or more items of identifying information of other persons.

Appellant argues on appeal that the State did not prove that he possessed Juarez's identifying information, which Officer Snell found in Robshaw's bra, or the fifty or more items of identifying information that law enforcement found under the passenger seat and in the glove compartment. Appellant argues that the only item of identifying information that he possessed was that which belonged to Sarah Silvernail.

We review the sufficiency of the evidence, whether denominated as a legal or a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim.

App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Brown v. State*, 381 S.W.3d 565, 573 (Tex. App.—Eastland 2012, no pet.) (citing *Jackson*, 443 U.S. at 314, 318 n.11, 320).

To obtain a conviction for fraudulent possession of identifying information, the State had to prove that Appellant not only exercised actual care, control, or custody of the items, but that he was conscious of his connection with them and possessed them knowingly. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). When a defendant does not have exclusive possession of the place where the items were found, the evidence must link the defendant to the items and establish that the defendant's connection with the items was more than fortuitous. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006); *Pollan v. State*, 612 S.W.2d 594, 596 (Tex. Crim. App. [Panel Op.] 1981).

We consider several nonexclusive factors when we determine whether there are links between the accused and the items: (1) the defendant's presence when the search was executed; (2) whether the items were in plain view; (3) the defendant's proximity to and the accessibility of the items; (4) whether the defendant possessed other items of identifying information that did not belong to him when he was

6

arrested; (5) whether the defendant made incriminating statements; (6) whether the defendant attempted to flee; (7) whether the defendant made furtive gestures; (8) whether other contraband was present; (9) whether the defendant had the right to possess the place where the items were found; (10) whether the place where the items were found was enclosed; and (11) whether the defendant's conduct indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12.

Here, when we view the evidence in a light most favorable to the verdict, we conclude that the factors weigh in favor of the conclusion that Appellant possessed both Juarez's identifying information and fifty or more pieces of identifying information. The fact that Appellant was not in exclusive possession of Juarez's identifying information or the other items of identifying information that were in the pencil box and ziplock bag is not dispositive; "[r]ather, it is the logical force or the degree to which the [above-listed] factors, alone or in combination, tend to affirmatively link [Appellant] to the contraband." *Hodges v. State*, No. 05-16-00647-CR, 2017 WL 2391720, at \*3 (Tex. App.—Dallas June 1, 2017, pet. ref'd) (mem. op., not designated for publication); *see White v. State*, No. 02-16-00158-CR, 2017 WL 1089691, at \*2 (Tex. App.—Fort Worth Mar. 23, 2017, pet. ref'd) (mem. op., not designated for publication) ("Possession . . . need not be exclusive. When a defendant is not in exclusive possession . . . additional independent facts and circumstances must exist linking him to the contraband."). Although the pencil box was under the passenger seat, it was still in close proximity to Appellant, as was the ziplock bag in the glove compartment. Similarly, although Juarez's identifying information was on Robshaw's person, text messages and calls between Appellant and Robshaw in the weeks before the stop support the conclusion that Appellant likely knew that Robshaw had at least one other person's identifying information on her person.

Additionally, the large amount of cash that police found in the vehicle and the fact that Appellant had identifying information for Sarah Silvernail in his backpack indicate links between Appellant and the items of identifying information. Although the vehicle was a rental car and Appellant did not own it, the fact that Appellant was the driver when Officer Snell initiated the stop supports the inference that he was in control of the contents of the vehicle. Finally, Appellant's conduct indicated a consciousness of guilt. Appellant's story about what he and Robshaw were doing did "not mak[e] sense." Appellant also behaved in a very nervous way after he exited the vehicle. When we view the evidence in the light most favorable to the verdict, we hold that the evidence was sufficient to affirmatively link Appellant both to Juarez's identifying information and to the other items of identifying information in the vehicle. Appellant's first and second issues are overruled.

In his third issue, Appellant argues that the trial court erred when it instructed the jury on a mandatory presumption without a limiting instruction required by Section 2.05 of the Texas Penal Code. As we have discussed above, a person commits the offense of fraudulent possession of identifying information if he, "with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of . . . identifying information of another person without the other person's consent." PENAL § 32.51(b)(1). In its instructions to the jury, the trial court stated, "A person is presumed to have the intent to harm or defraud another if a person possesses the identifying information of three or more persons." *See id.* § 32.51(b-1)(1). However, if the jury instruction includes the Section 32.51(b-1)(1) instruction, Section 2.05(a)(2) of the Penal Code requires:

> (2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

*Id.* § 2.05(a)(2).

Without the required instructions from Section 2.05(a), the presumption in Section 32.51(b-1)(1) is an unconstitutional, mandatory presumption. *See Willis v. State*, 790 S.W.2d 307, 309–10 (Tex. Crim. App. 1990); *Webber v. State*, 29 S.W.3d 226, 230 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Mandatory presumptions are unconstitutional because they relieve the State of the burden to prove every element of the offense beyond a reasonable doubt. *Garrett v. State*, 220 S.W.3d 926, 930 (Tex. Crim. App. 2007). Because Appellant did not object at trial to this error in the court's charge, we cannot reverse the conviction absent a finding that the error caused Appellant to suffer egregious harm. *Bellamy v. State*, 742 S.W.2d 677, 685 (Tex. Crim. App. 1987); *Almanza v. State*, 686 S.W.2d 157, 171–72 (Tex. Crim. App. 1985). When we determine whether Appellant suffered egregious harm, we consider (1) the complete jury charge; (2) the arguments of counsel; (3) the entirety of the evidence, including the contested issues and weight of the probative evidence; and (4) any other relevant factors the record reveals as a

whole. *Hollander v. State*, 414 S.W.3d 746, 749–50 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171.

Officer Snell testified that she found items of identifying information that belonged to Juarez on Robshaw's person. Law enforcement also found identifying information for Silvernail in Appellant's backpack. Additionally, Officer Lewis testified that she found a pencil box underneath the passenger seat and a gallon ziplock bag in the glove box of the vehicle. Officer Lewis testified that the pencil box and ziplock bag contained numerous items of identifying information "with different people's names" on them. The State introduced all of these items into evidence. Officer Snell also testified that Robshaw used a license that belonged to Limor Davis to identify herself. Juarez also testified that his vehicle had been broken into earlier that evening and that his items of identifying information, which law enforcement later recovered, had been stolen from his vehicle.

Appellant argues that the State "emphasized" the presumption both in voir dire and in its closing argument during the guilt/innocence phase of trial. Appellant directs us to the State's discussion of the presumption in voir dire:

> Now, under that, you notice it said to defraud and harm, or harm and defraud, and it's presumed to -- a person is presumed to have the intent to harm or defraud if the actor possesses the identifying information of three or more other persons. Does that make sense? In other words, if you've got three or more people's different identification on your person, it is presumed -- I hate to use the word assume; that's not really right -- it's presumed that you are intending to defraud or harm people. Does that make sense?

Similarly, Appellant directs us to a portion of the State's closing argument:

> The other thing I wanted to point out in the charge, what the Judge said, is -- part of it here (indicating): A person is presumed to have the intent to harm or defraud another if the person possesses the identifying information of three or more persons. (Indicating). We've got that. We've got a lot of stuff, is what we've got. We've got too much stuff.

10

In *Hollander*, the Court of Criminal Appeals explained that, although the prosecutor told the jury on several occasions that the State had to supply "corroborating" evidence to prove the presumption and reminded the jury that the State had the overall burden of proof, those assertions "did nothing to ameliorate the lack of an instruction regarding the specific level of *confidence* necessary for the jury to rely on those predicate facts before implementing the presumption." *Hollander*, 414 S.W.3d at 750–51. The court held: "In an egregious-harm analysis, the question is not simply whether, when viewed in the light most favorable to the verdict, the jury *could* rationally have found predicate facts to a level of confidence beyond a reasonable doubt." *Id.* at 751. "Instead, a reviewing court must evaluate the likelihood, considering the record as a whole, that a properly instructed jury *would* have found the predicate facts to the requisite level of confidence." *Id.*

Taking into consideration *Hollander*, we hold that the error did not egregiously harm Appellant. The items of identifying information that law enforcement found on Robshaw's person, in Appellant's backpack, and in the vehicle were all admitted into evidence. Additionally, the jury found that Appellant possessed Juarez's items of identifying information beyond a reasonable doubt even though they were on Robshaw's person. We hold that, in all likelihood, the jury's finding would not have been different if the trial court had provided the jury the proper instructions. Appellant's third issue is overruled.

In his fourth issue, Appellant argues that the trial court erred when, over Appellant's authentication objections, it admitted numerous items of identifying information that law enforcement found in the vehicle. These items included checks, receipts, social security cards, credit and debit cards, driver's licenses and other forms of government identification, and insurance cards, among other items.

Whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637 (Tex. Crim. App. 2012). Only relevant evidence is admissible. TEX. R. EVID. 402. Relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without the evidence[,] and . . . the fact is of consequence in determining the action." TEX. R. EVID. 401. Evidence not properly authenticated is irrelevant, and authentication is a "condition precedent" to admissibility. *Tienda*, 358 S.W.3d at 638; *see* TEX. R. EVID. 901(a).

Rule 901(a) of the Texas Rules of Evidence provides that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." One of the ways in which a proponent can satisfy the requirement is to offer testimony from a witness who has knowledge of what the item is and testifies that the item is what it is claimed to be. TEX. R. EVID. 901(b)(1). If the proponent produces evidence sufficient to support a finding of authenticity, the trial court should admit the proffered evidence. *Tienda*, 358 S.W.3d at 638. Whether an item actually is what its proponent claims it to be is a question for the factfinder. *Id.* We review a trial court's ruling on the admissibility of evidence for an abuse of discretion and will not interfere with that ruling unless it is outside the "zone of reasonable disagreement." *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

We note that checks are self-authenticating commercial paper. TEX. R. EVID. 902(9); TEX. BUS. & COM. CODE ANN. §§ 3.103, 3.104 (West Supp. 2017) (checks are negotiable instruments); *Ethridge v. State*, No. 12-09-00190-CR, 2012 WL 1379648, at *18–19 (Tex. App.—Tyler Apr. 18, 2012, no pet.) (mem. op., not designated for publication) (holding that checks are self-authenticating commercial

12

paper).  Therefore, the checks that the State introduced into evidence were properly authenticated.

Additionally, the other items the State introduced into evidence may be authenticated by their "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with [the] circumstances."  TEX. R. EVID. 901(a)(4).  Officer Lewis testified that, when she searched under the passenger seat of the vehicle, she found "multiple different IDs from different states.  There were different credit cards in different people's names.  It was almost filled all the way to the top with IDs and credit cards."  Officer Snell also testified that the items included "numerous identifications, credit cards, Social Security cards, gift cards, [and] the carbon copies of some checks."  Given Officer Lewis's testimony and Officer Snell's testimony, in conjunction with the circumstances, we hold that the remaining items were properly authenticated.  Appellant's fourth issue is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


December 29, 2017

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.