

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-17-00218-CR

---

LOUIS DWAYNE FELKINS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the County Court at Law No. 2
Ector County, Texas
Trial Court No. 16-2113-CCL2, Honorable Scott Layh, Presiding

---

June 14, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Appellant Louis Dwayne Felkins appeals from his conviction by jury of the Class A misdemeanor offense of deadly conduct[1] and the resulting sentence of 365 days of imprisonment in the county jail and a $2000 fine. Appellant challenges his conviction through two issues. We will reverse the trial court's judgment and remand the case for a new trial.

---

[1]TEX. PENAL CODE ANN. § 22.05 (West 2018).

## Background

At trial, the State presented evidence to show that in early April 2016, appellant fired a .410-gauge shotgun shell while in his home, leaving a hole in a front window. Three copper disks from the shell[2] crossed the street in front of appellant's home and hit the home of appellant's brother-in-law, William Alan Hoyt. One disk entered a window of Hoyt's home, lodging in a wall. Hoyt testified he and appellant did not get along, telling the jury "[t]here is no relationship between Louis Felkins and I, except for him constantly harassing us and stalking us." Hoyt's wife, appellant's sister, was not at home at the time.

Hoyt called the Ector County Sheriff's Department. The responding sheriff's deputy testified he had prior experience with appellant and Hoyt. He said Hoyt and appellant had "a long feud" and appellant had "a bad temper." When a backup deputy arrived, the two of them spoke with appellant. The deputies testified appellant told them he came out of his bedroom holding a shotgun. He explained "his toes [had been] amputated" and that caused him to trip on an extension cord and his "little chihuahua." As a result of his fall, he said, the shotgun discharged.

A week later, a detective assigned to investigate the case again spoke with appellant. He testified he did not believe appellant's story that the discharge was accidental. He said, "[i]t's highly likely that if he had tripped, it would have gone more than at an angle, straight up or maybe straight down, depending on how he was holding it. But in this case, it looks as if [it] (sic) was pointed directly at Mr. Hoyt's house across the street."

---

[2] The shell contained copper disks along with typical BB-type shot.

Appellant testified, telling the jury he stumbled while holding the shotgun and the resulting discharge was an accident. He said he walked from the bedroom into the living room with the shotgun in his hands with the intention of setting the gun beside a desk, expecting that a friend was coming to get the gun. Appellant maintained he did not know the gun was loaded, and did not aim at Hoyt's home. He said, "[b]ecause of the pistol grip that's on it, you naturally put your finger in the trigger guard." He testified "[i]t was a total accident. There was no intention and it was definitely not, you know, aimed at anybody." He also said he had never before fired the weapon.

Analysis

Presumption

In appellant's first issue, he contends the trial court erred when it failed to charge the jury pursuant to section 2.05 of the Texas Penal Code regarding presumptions.

The offense of deadly conduct includes a presumption. *Webber v. State,* 29 S.W.3d 226, 230 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). One means of deadly conduct occurs when a person "recklessly engages in conduct that places another in imminent danger of serious bodily injury." TEX. PENAL CODE ANN. § 22.05(a). The statute provides, "Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." TEX. PENAL CODE ANN. § 22.05(c). When a trial court instructs the jury on the section 22.05(c) presumption, it is required to include also a section 2.05(2) instruction. *Webber,* 29 S.W.3d at 230.

3

Section 2.05(2) of the Penal Code provides:

(2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, that:

(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

TEX. PENAL CODE ANN. § 2.05(2).

Mandatory presumptions are unconstitutional. *Webber,* 29 S.W.3d at 231 (citing *Willis v. State,* 790 S.W.2d 307, 309 (Tex. Crim. App. 1990) (en banc)). That is true because such presumptions "relieve the State of the burden of proving every element of the offense beyond a reasonable doubt." *Garrett v. State*, 220 S.W.3d 926, 930 (Tex. Crim. App. 2007). The section 2.05(2) instruction serves the purpose of converting prohibited mandatory presumptions into permissive presumptions, which are generally constitutional. *Webber,* 29 S.W.3d at 231 (citation omitted). Permissive presumptions "allow, but do not require, the jury to infer the element from the predicative facts." *Id.* (citation omitted). When a trial court gives a section 22.05(c) instruction on a presumed fact, failure to include a section 2.05(2) instruction gives rise to both statutory and constitutional error. *Id.*

4

Appellant was charged with deadly conduct under Penal Code section 22.05(a). The amended information alleged he "did then and there recklessly engage in conduct that placed another, William Alan Hoyt, in imminent danger of serious bodily injury." *See* TEX. PENAL CODE ANN. § 22.05(a).

The jury charge contained the statement, "Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." *See* TEX. PENAL CODE ANN. § 22.05(c). But the court did not instruct the jury on the effect of the presumption as mandated by section 2.05(2). The State acknowledges this was error. Appellant did not object to the error at trial, requiring for reversal that we find the error was egregiously harmful.

Under *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim. App. 1985) (en banc) (op. on reh'g), a party may complain of unobjected-to error if he can show it "was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State,* 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (citing *Almanza,* 686 S.W.2d at 171). Charge error is egregiously harmful "if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (citations omitted). Egregious harm is a "'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Id.* (citing *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). Under this standard, neither party bears the burden of showing harm on appeal. *Id.* (citing *Warner v. State,* 245 S.W.3d 458, 464 (Tex. Crim. App. 2008)).

To determine if the defendant suffered egregious harm, we consider: (1) the entire charge, (2) the state of the evidence, including contested issues, (3) arguments of counsel, and (4) any other relevant information. *Webber*, 29 S.W.3d at 236 (citations omitted). The purpose of the review is to find actual harm to the accused, not mere theoretical harm. *Id.* (citation omitted).

The presumption implicating deadly conduct comes into play if the jury believes the actor knowingly pointed a firearm at or in the direction of another, whether or not the actor believed it to be loaded. TEX. PENAL CODE ANN. § 22.05(c). The presumed facts are the recklessness of the conduct and the danger to the victim. The section 2.05(2) instruction would have told the jury that to apply the presumption, it must find beyond a reasonable doubt that appellant knowingly pointed the gun at or in the direction of another. The instruction also would have told the jury that, even if the knowing pointing was proven beyond reasonable doubt, the jury was not bound to find appellant acted with recklessness or that Hoyt was thereby placed in imminent danger of serious bodily injury.

Evaluating the positions of the parties on appeal, after review of the record we disagree with the primary positions of both parties. Appellant's brief initially overstates the case by arguing "[t]he State's entire case rested on the presumption in Texas Penal Code Section 22.05(c)." The argument points to the conclusion of the court in *Hollander v. State,* 414 S.W.3d 746 (Tex. Crim. App. 2013), in which the court found the State there "made no determined effort to establish the appellant's guilt independently of the . . . presumption, and the evidence that it proffered as predicate facts to support that presumption was purely circumstantial." *Id.* at 751. The same is not true in the case before us.

6

The jury heard evidence which, if believed, demonstrated appellant engaged in conduct that placed Hoyt in imminent danger of serious bodily injury, and that he acted at least recklessly, if not knowingly or intentionally.[3] Hoyt testified he had been standing in the doorway of his home minutes before the shot was fired. He said he was present, and nearby, when the disk came through the window and hit a wall between the bedroom and bathroom of his home. He said he dropped to the floor, thinking more shots might be fired. It was undisputed at trial that the shotgun was in appellant's hands when it discharged. Appellant testified as much.

Photographs depicted the relatively small hole in the living room window of appellant's home, its location across the street from Hoyt's home, and the disks' points of impact on the front of Hoyt's home. The discharge hole was shown to be near the top of the window, some six feet off the floor. Appellant said he was at a location across the room from the window when he stumbled. But, other than the hole in the window glass and damage to the venetian blinds covering the window, no other damage appears in the interior of appellant's living room. Officers testified to their opinions that the condition of the room, the location of the hole in the window and the apparent trajectory of the disks made it unlikely the shotgun discharged while appellant was falling. Officer testimony also expressed the opinion the shotgun's barrel was in an elevated position about six feet off the floor at the time it was fired. In short, the State presented evidence to prove its case; its "entire case" did not rest on presumption.

---

[3] *See* TEX. PENAL CODE ANN. § 6.03 (defining culpable mental states).

But we disagree also with the State's primary argument, contending appellant suffered no egregious harm from omission of a charge under section 2.05(2) because the great weight of the evidence "shows that [appellant] knowingly pointed his shotgun at [Hoyt]."

Courts of appeals sometimes have found defendants suffered no egregious harm from omission of a charge under section 2.05(2) when the great weight of the evidence supported the facts giving rise to a statutory presumption. The court reached that conclusion in *Neely v. State,* 193 S.W.3d 685 (Tex. App.—Waco 2006, no pet.), and the State's brief argues similarities between that case and this call for the same conclusion. We do not agree.

*Neely* also involved the misdemeanor offense of deadly conduct. *Id.* at 685. The defendant was accused of pointing a rifle at another person. *Id.* at 686. The complainant testified the defendant fired several shots in his general direction, then pointed the rifle at him when he objected. *Id.* The defendant said she fired at some birds with a pistol but did not point a rifle at anyone. *Id.* The court gave the jury the section 22.05(c) presumption instruction but did not include the accompanying section 2.05 instruction. *Id.* at 686-87. Concluding that the great weight of the evidence demonstrated the facts giving rise to the presumption, that is, that the defendant knowingly pointed a rifle at the complainant, the court found no egregious harm resulted from omission of the section 2.05 instruction. *Id.* at 687. A dissenting opinion disagreed with the majority's analysis. *Id.* at 688-89 (Gray, C.J., dissenting).

Several factors distinguish the case before us from *Neely*. Significantly, as the majority viewed the case, the trial court's charge error in *Neely* did not relate to a contested issue. *Id.* at 688. The majority found the contested issue to be whether the defendant pointed the rifle at the victim at all. Concluding that whether the pointing of the rifle was reckless and dangerous was not a contested issue, the majority found the charge error was thus "benign." *Id.*

As we view the record before us, the nature of appellant's conduct was very much at issue. The State urged a theory of the evidence showing appellant knowingly, if not intentionally, pointed the shotgun in Hoyt's direction. Appellant acknowledged holding the gun when it discharged, but denied he pointed it at anyone. And, unlike the majority view in *Neely*, the presumed facts, recklessness of the conduct and the danger to the victim, were also in dispute here. A juror's assessment of the recklessness of appellant's conduct and the resulting danger to Hoyt depended substantially on the juror's acceptance of the State's, or appellant's, version of the events.

At this point the arguments of counsel become important to our analysis. *Webber*, 29 S.W.3d at 236 (factors in egregious harm analysis). The State argued to the jury that appellant's version of the events was not believable, at one point referring to it as "nonsense." At the same time, however, the State suggested appellant's conduct was reckless and dangerous even under his version. The prosecutor pointed out, "By his own testimony, he's walking around with a shotgun . . . with his finger in the trigger." And the prosecutor later rhetorically asked, "Is it reckless even if you actually believe this story?" We believe jurors heard the State to argue they should accept the State's version of the events but could find appellant guilty on his own testimony.

During closing arguments, the first prosecutor pointed out the statutory presumption and told the jury the Penal Code provides that "Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." In rebuttal, the second prosecutor again mentioned the presumption but misquoted it, saying "the presumption says if you discharge it, that is reckless in itself. That's what he did." Neither prosecutor mentioned the requisites of the missing 2.05(2) instruction. By its jury argument that appellant was guilty even under his version of events, the State elevated the significance of the presumption, further distinguishing this case from *Neely*.

The State relies also on *Webber,* 29 S.W.3d at 230, another deadly conduct case in which the presumption instruction was given without the section 2.05 instruction. *Id.* at 231. In its egregious harm analysis, the court said "[w]hether the appellant was reckless and placed [the victim] in danger was the crux of the state's case." *Id.* at 236. Assessing the implications of the defendant's challenge to the State's evidence of danger, which argued the State did not prove the gun he pointed at the victim's head was a real gun and capable of firing rather than a toy gun, *id.* at 236-37, the court found the defendant's "suggestion that the gun was a toy was not based on any evidence and so is not a theory a reasonable mind could entertain on the facts of this case." *Id.* at 237. Thus the overwhelming weight of the evidence supported the facts giving rise to the presumption and the defendant suffered no egregious harm from the absence of the section 2.05 instruction. *Id.*

Here, the State's theory may more likely be accurate, but in our harm analysis we cannot conclude appellant's testimony denying he knowingly pointed the shotgun

presented a theory no reasonable mind could entertain. That is particularly true since the State by its argument suggested jurors could convict him even if they gave credence to appellant's testimony.

For these reasons, neither the *Neely* nor the *Webber* opinion supports the State's position on harm.[4]

In our evaluation of harm, we also consider the entire jury charge. The charge here includes the general language that the defendant is presumed innocent and the State is required to prove every element of the offense beyond a reasonable doubt. As have other courts, however, we find that language is not sufficient to remove harm from the missing 2.05(2) instruction. *Webber,* 29 S.W.3d at 236; *Lewis,* 151 S.W.3d at 224. The United States Supreme Court has found that such general language "is not inconsistent with a conclusive or burden-shifting presumption." *Webber,* 29 S.W.3d at 236. This is so because "the jury could interpret the instructions as indicating that although intent must be shown beyond a reasonable doubt, the proof of the act, as the predicative fact for the presumption of intent, constituted proof beyond a reasonable doubt unless the defendant persuaded the jury otherwise." *Id.* (citing *Francis v. Franklin,* 471 U.S. 307, 319 (1985)). Accordingly, the general instructions do not remedy the error

---

[4] The State also cites cases involving the presumption under Penal Code section 22.02(c) that a distinctive uniform or badge indicating employment as a public servant gives rise to knowledge of that status. TEX. PENAL CODE ANN. § 22.02(c) (aggravated assault). *See State v. Lewis,* 151 S.W.3d 213, 223 (Tex. App.—Tyler 2004, pet. ref'd); *Rudd v. State,* 921 S.W.3d 370 (Tex. App.—Texarkana 1996, pet. ref'd); *Maldonado v. State,* 902 S.W.2d 708 (Tex. App.—El Paso 1995, no pet.). Because of the differences in the presumptions involved, and the great differences in the facts presented, we do not find those cases helpful in our analysis of harm from the charge error in this case.

stemming from the missing 2.05(2) instruction. *Id. See also Hollander,* 414 S.W.3d at 750 (citations omitted).

Presented with conflicting evidence of the nature of appellant's conduct, the jury was asked to determine whether, beyond reasonable doubt, his conduct was reckless and placed Hoyt in imminent danger of serious bodily injury. It then was told that the elements of recklessness and danger were presumed if appellant knowingly pointed a firearm at or in the direction of another, whether or not he believed it to be loaded. But the presumption was not made permissive as the Constitution requires; it was mandatory. Having considered all the factors of egregious harm analysis, we find the presumption directly addressed contested elements of the offense, and its mandatory nature was not mitigated by any other factor appearing in the record. Accordingly, we find the unobjected-to charge error affected the very basis of the case and deprived appellant of a valuable right, that of proof of every element of the offense beyond reasonable doubt, ultimately depriving him of a fair and impartial trial. *See Hollander*, 414 S.W.3d at 753 (similar conclusion); *see also Hollander*, 414 S.W.3d at 756 (Cochran, J., concurring) ("[g]enerally speaking, jury instruction error involving presumptions that appear to be mandatory will cause the defendant 'egregious harm' because they violate the constitutional requirement that the State prove every element of an offense beyond a reasonable doubt"); *Ramirez-Memije v. State*, 466 S.W.3d 894, 901 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (finding egregious harm from mandatory presumption).

We sustain appellant's first issue.

Conclusion

Appellant's second issue asserts his trial counsel rendered ineffective assistance through his failure to object to omission of the section 2.05 instruction from the charge. Because we have sustained appellant's first issue, consideration of his second is unnecessary. We reverse the judgment of the trial court and remand the cause for a new trial.

James T. Campbell
Justice

Do not publish.