

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00093-CR

KEARAYAN QUINTON WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 47259-B

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Responding to a report of unauthorized occupancy at a local hotel, Longview police entered Room 229 and found Kearayan Quinton Williams on one bed holding a glass pipe bearing methamphetamine residue. On the floor beside that bed, in plain view was a baggie with .05 grams of methamphetamine. The room smelled of marihuana. Williams, with a marihuana "blunt" or cigarillo behind his ear, dropped the pipe shortly after police entered. While still at the scene, Williams indicated to an officer that he had found the pipe and had intended to smoke methamphetamine in it.

Sitting on the floor of the room when police entered was Emily Williams (Emily), no relation to Appellant Williams. She was a methamphetamine user and knew Williams to be a methamphetamine user as well, both of them accustomed to smoking it with a glass pipe such as the one that had been in Williams' hand that night.

Earlier, a man named Antwon had been in the room with Williams and Emily. The hotel had a reputation as a place frequented by drug users.

The jury convicted Williams of possession of less than one gram of methamphetamine and assessed his sentence at two years' confinement. On appeal, Williams asserts that the evidence is legally insufficient to establish his knowing possession of the methamphetamine and that the trial court's joint-possession jury instruction was an impermissible comment on the weight of the evidence that caused him egregious harm. We affirm the judgment of the trial court because (1) legally sufficient evidence supports the conviction and (2) the joint-possession jury instruction did not cause egregious harm.

*(1)*    *Legally Sufficient Evidence Supports the Conviction*

Williams characterizes the evidence as insufficiently linking him and the methamphetamine found in the room to show his knowing possession. We disagree.

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Williams was in possession of methamphetamine as charged in the indictment if he (1) knowingly or intentionally (2) possessed (3) less than 1 gram of the drug. *See* TEX. HEALTH &

SAFETY CODE ANN. § 481.115(a), (b). Williams challenges only the elements of knowing possession. To establish unlawful possession of a controlled substance, "the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Evans v. State*, 185 S.W.3d 30, 34 (Tex. App.—San Antonio 2005), *rev'd on other grounds*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Possession is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. §1.07(a)(39) (Supp.).

While mere presence near contraband, without more, does not establish possession, sufficient independent facts and circumstances may justify the fact-finder in making the inference of knowing possession. *Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016). Examples of factors that can link an individual to such possession include the following:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 414; *Evans*, 202 S.W.3d at 162 n.12. While factors such as these can guide our analysis, the question we are to answer is whether the combined and cumulative force of the evidence and reasonable inferences from it can rationally justify the fact-finder in its finding guilt beyond a reasonable doubt. *Tate*, 500 S.W.3d at 414.

4

Here, (1) Williams was present, (2) the drug was in plain view, (3) he was nearest the drug and had the best access to it, (4) he was not shown to be under the influence, (5) he possessed marihuana and a methamphetamine pipe, (6) he made incriminating statements to police, (7) he made no attempt to flee or resist arrest, (8) he made no furtive gestures (though an officer characterized him as trying to hide the pipe in his up-raised hand), (9) there was the odor of marihuana, (10) other contraband and drug paraphernalia were present, (11) he was in joint possession of the place in which the drugs were found, though his right to be there was dubious, (12) the room was an enclosed space, (13) no significant amount of cash was noted, and (14) his possession of the pipe and his admissions at the scene indicated a consciousness of guilt. With ten of the fourteen factors present, including a few of the more salient factors, there are ample links present. *Cf. Evans*, 202 S.W.3d at 163.

Legally sufficient evidence supports the jury's finding that Williams knowingly possessed the methamphetamine on the evening in question. This point of error is overruled.

*(2)    The Joint-Possession Jury Instruction Did Not Cause Egregious Harm*

During the guilt/innocence phase of trial, the jury was given the following instruction, in association with both the elements of the offense and in defining "possession": "Two or more people can possess the same controlled substance at the same time." This was followed immediately by another instruction: "If the evidence shows only that the defendant was at a place where the controlled substance was being possessed, that evidence alone is not enough to convict him." Following the definition of "possession," the charge stated, "Possession need not be exclusive."

5

Williams claims this joint-possession instruction, embodied in the instruction first above quoted, was an improper comment on the weight of the evidence and was egregiously harmful. We disagree with his harm contention.

The purpose of a jury charge is to instruct the jury on the applicable law, and a charge must include an accurate statement of the law. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. Moreover, the trial court must apply the law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004). A trial court may not submit a charge that comments on the weight of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. A charge comments on the weight of the evidence if it assumes the truth of a controverted issue or directs undue attention to particular evidence. *See Lacaze v. State*, 346 S.W.3d 113, 118 (Tex. App—Houston [14th Dist.] 2011, pet. ref'd). In determining whether the charge improperly comments on the weight of the evidence, we consider the court's charge as a whole and the evidence presented at trial. *See id.*

Trial courts should generally avoid giving non-statutory jury instructions because they often tend to impermissibly comment on the weight of the evidence. *See Walters v. State*, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007); *see also Beltran De La Torre v. State*, No. PD-0561-18, 2019 WL 4458576, at *3 (Tex. Crim. App. Sept. 18, 2019). Though such an instruction is well intentioned, it often puts more weight on certain evidence at the expense of other evidence. *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000); *see Beltran De La Torre*, 2019 WL 4458576, at *3.

The Texas Court of Criminal Appeals has very recently ruled that a joint-possession instruction like the one given in this case constitutes error. *See Beltran De La Torre*, 2019 WL

6

4458576, at \*3. That case, issued September 18, 2019, involved illegal drugs found in a vehicle with multiple occupants and unanimously held that a joint-possession instruction was an improper comment on the weight of the evidence. *Id.* Though that opinion has not yet been released for publication, for our purposes we will assume error and move on to the harm analysis required of us.

The level of harm necessary to require reversal due to jury charge error is dependent on whether the appellant properly objected to the error. *See Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). Here, because Williams did not object to the charge, the error is not reversible unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)), such that he did not receive a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). In making this determination, we consider the complete jury charge, arguments of counsel, all the evidence, including the contested issues and weight of the probative evidence, and any other relevant factors revealed by the record as a whole. *See Hollander v. State*, 414 S.W.3d 746, 749–50 (Tex. Crim. App. 2013). "Neither party bears a burden of production or persuasion with respect to an *Almanza* harm analysis, the question being simply what the record demonstrates." *Id*. at 50 (citing *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008)). Direct evidence of harm is not required to establish egregious harm.

7

*Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).  We will not reverse a conviction unless there was actual, rather than theoretical, harm.  *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

Examining the complete jury charge, we see an ordinary jury charge containing an improper instruction.  The instruction did not misstate the law.  It was just improper in that it could have unduly drawn the jury's attention to that as a comment on the weight of the evidence.  And there is no indication that the jury was influenced by, or particularly focused on, the challenged instruction.

When examining arguments of counsel, we do not see joint possession as a central issue in the case.  The State's opening statement laid out simple possession of the drug by Williams, without mention of joint or multiple possessors.  Williams focused his opening statement on contending that there was potentially uncontrolled access to the room and that he was not aware of the methamphetamine.  In opening the final arguments, the State emphasized that Williams knew he had a controlled substance, by focus on his admission that he found the methamphetamine pipe and was going to light it up, presumably with the contraband in question.  The State opined on what Williams knew:  that he had the pipe and that he had what he wanted to smoke in it, the methamphetamine.  The State did briefly address joint possession of contraband, but its reference was to Antwon as the possible owner of the drug.  Its intent was to warn the jury not to be misled by Antwon's possible involvement, because Williams was going to smoke it and thus knew he had control of it, himself.  Williams' final argument drew the focus to the possible uncontrolled room access arising from the break-in the day before and the lack of room cleaning in the interim.  His

8

argument painted the picture of others coming in and going out of the room. In the end, his argument urged the jury to believe that he was not aware of the methamphetamine, just of the pipe. So, the question was posed as whether he was aware or had knowledge of the drug. There was no reference at that point to joint possession. The State wrapped up the final argument by detailing what was known: that Williams smokes methamphetamine, that he had the methamphetamine pipe, that he was right next to the bag of methamphetamine, and that the hotel was a hotbed for drugs. The State asked the rhetorical question whether jurors could believe that someone would break into a room and then leave his or her methamphetamine there unguarded. There was no mention of joint possession at that stage.

The evidence was pretty clear that Williams was closest to the contraband and had the best access to it. He clearly had a methamphetamine pipe. He was a known methamphetamine user. He clearly possessed other contraband, that is, marihuana. And he uttered words that police characterized as admitting, and the jury could have believed admitted, his plans to smoke methamphetamine with the pipe in his hand. The only methamphetamine that he could have smoked was the contraband in question. The strength of the evidence as a whole strongly suggests that Williams was not egregiously harmed by the complained-of instruction.

And, after our consideration of each of the above factors, we conclude that the joint-possession instruction did not affect the very basis of the case, deprive Williams of a valuable right, or vitally affect any defensive theory. *See Stuhler*, 218 S.W.3d at 719. Thus, Williams was not egregiously harmed.

9

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice


Date Submitted:     October 11, 2019
Date Decided:      October 16, 2019

Do Not Publish